**CASE NO. 24-10335**

---

**IN THE UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT**

---

SWEET ADDITIONS INGREDIENT PROCESSORS, LLC,

*Plaintiff-Appellant*

vs.

MEELUNIE AMERICA, INC.,

*Defendant-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:21-CV-81141-AHS

---

<u>**DEFENDANT-APPELLEE MEELUNIE AMERICA, INC.'S BRIEF**</u>

---

HUBBARD SNITCHLER & PARZIANELLO PLC
John A. Hubbard (FL Bar No.100925)
Eric A. Parzianello (FL Bar No. 161225)
Zane M. Thompson (FL Bar No. 118936)
jhubbard@hspplc.com
eparzianello@hspplc.com
zthompson@hspplc.com
999 Vanderbilt Beach Road
Naples, FL 34108
Tel: (239) 325-1802

**DEFENDANT-APPELLEE MEELUNIE AMERICA, INC.'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1(a), Defendant-Appellee Meelunie America, Inc. (hereinafter referred to as "Meelunie" or Appellee") submits the following Certificate of Interested Persons and Corporate Disclosure Statement of all judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal.

1. Meelunie America, Inc., Appellee.

2. David Abbeg.

3. Hubbard Snitchler & Parzianello PLC, Attorneys for Appellee.

4. John A. Hubbard, Esq. of Hubbard Snitchler & Parzianello PLC, Attorneys for Appellee.

5. Eric A. Parzianello, Esq. of Hubbard Snitchler & Parzianello PLC, Attorneys for Appellee.

6. Zane M. Thompson, Esq. of Hubbard Snitchler & Parzianello PLC, Attorneys for Appellee.

7. Sweet Additions Ingredient Processors, LLC, Appellant and its Members.

8. Ken Valdivia.

9.  Mauro Law, P.A., Attorney for Appellant.

10. C. Cory Mauro, Esq. of Mauro Law, P.A., Attorneys for Appellant.

11. Honorable Raag Singhal, U.S. District Court Judge, Presiding Judge.

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant/Appellee hereby identifies its parent corporation and any publicly held corporation owning 10% or more of its stock as follows: Meelunie B.V., a foreign corporation headquartered in Amsterdam in the Netherlands, is Meelunie America, Inc.'s parent corporation.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Although Appellee Meelunie believes the issues are adequately addressed in the briefing and in the District Court's decision, Meelunie does not oppose oral argument if it will aid this Court's decisional process. *See* Fed. R. App. P. 34(a)(2); 11th Cir. R. 34-3(b).

# TABLE OF CONTENTS

Table of Contents

**STATEMENT OF THE ISSUES** ................................................................................... 1

**INTRODUCTION** ....................................................................................................... 1

**STATEMENT OF THE CASE** ................................................................................... 3

**ARGUMENT** ............................................................................................................. 14

I.    THE DISTRICT COURT PROPERLY RULED THAT THE T&CS HAD
BEEN INCORPORATED INTO THE AGREEMENT ..................................................... 14

A.    Meelunie's T&Cs are enforceable ................................................................ 15

B.    SAIP ratified Meelunie's T&Cs .................................................................... 16

C.    Ignorance of not reading a contract does not exempt SAIP from being bound
by its terms 17

D.    SAIP's cited cases are distinguishable .......................................................... 20

II.    THE DISTRICT COURT PROPERLY RULED THAT SAIP AGREED TO
EXCLUDE COST OF SUBSTITUTE PRODUCTS UNDER THE T&CS ...................... 32

A.    SAIP agreed to exclude cost of substitute products ...................................... 34

B.    The T&Cs provide SAIP with an agreed upon exclusive remedy .............. 43

C.    The Contract is not illusory .......................................................................... 52

**CONCLUSION** .......................................................................................................... 55

# **TABLE OF CITATIONS**

## **Cases**

*Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288 (Fla. 4th DCA 2006)…………………………………………………..22, 24

*Anaheim Indus, Inc v Gen Motors Corp,* No. 01-06-00440-CV, 2007 WL 4554213, at *9–10 (Tex. App. Dec. 20, 2007)…………………………………....32-33, 44

*Andersons, Inc. v. Horton Farms, Inc.* 166 F.3d 308, 322-23 (6th Cir. 1998)…….44

*Anderson v. Walthal*, 468 So.2d 291 (Fla. 1st DCA 1985)………………………19

*Bacon v. Avis Budget Group, Inc*, 357 F Supp 3d 401, 407 (DNJ, 2018)…....28, 29

*Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012)…....17

*BGT Group, Inc. v. Tradewinds Engine Services, LLC*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011)……………………………………………….15, 21, 28, 29, 30, 31

*BOC Group, Inc. v. Chevron Chem. Co., LLC*, 359 N.J. Super. 135, 148, 819 A.2d 431, 439 (App. Div. 2003)……………………………………………………51

*Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060,1066 (11th Cir. 2004)....11-12

*Calderon v Sixt Rent a Car, LLC*, No. 19-CV-62408, 2020 WL 700381, at *6 (S.D. Fla. Feb. 12, 2020), *aff'd*, 5 F.4th 1204 (11th Cir. 2021)……………………………………………………………………….29, 30, 31

*Chemetron Corp. v. McLouth Steel Corp.*, 381 F. Supp. 245, 251 (N.D. Ill. 1974), aff'd, 522 F.2d 469 (7th Cir. 1975)…………………………………..…37, 38

*Citizens Prop. Ins. Corp. v. Eur. Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 777–78 (Fla. Dist. Ct. App. 2010)……………………………………………18

*Computel, Inc. v. Emery Air Freight Corp.*, 919 F.2d 678, 684–85 (11th Cir. 1990)……………………………………………………………………………19

iii

*Dellacasa, LLC v. John Moriarty & Associates of Florida, Inc.*, 07-21659-CIV, 2008 WL 299024, at *13 (S.D. Fla. Feb. 1, 2008)………………………....…..23

*Dependable Component Supply Corp. v. Lear Corp.*, 06-61105-CIV, 2007 WL 9700500, at *2 (S.D. Fla. Feb. 20, 2007), *report and recommendation adopted*, 06-61105- CIV, 2007 WL 9698314 (S.D. Fla. May 14, 2007)…….25, 26, 27, 28

*Dental Health Products, Inc v Sunshine Cleaning Gen Servs., Inc*, 657 F. Supp. 3d 1151, 1158 (E.D. Wis. 2023)………………………………………………..…50, 51

*Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1333 (S.D. Fla. 2004)………………………………………………………..21, 22

*Foam Supplies, Inc. v. Dow Chem. Co.*, 4:05CV1772 CDP, 2008 WL 3159598, at *6 (E.D. Mo. Aug. 4, 2008)……………………………………………………...49

*Gomez Packaging Corp v. Smith Terminal Warehouse Co*, Inc, No. 11-21992-CIV, 2011 WL 13223733, at *8 (S.D. Fla. Sept 12, 2011)…………………………..31

*Gustavvson v. Wash. Mut. Bank, F.A.*, 850 So. 2d 570, 573-574 (Fla. 4th DCA 2003)…………………………………………………………………………….23

*Harvey As Tr. of Russel A. Schlegel Revocable Living Tr. v. Lifespace Communities, Inc.*, 306 So. 3d 1248, 1251 (Fla. 5th DCA 2020)……………22, 23

*Kaye v. Macari Bldg. & Design, Inc.*, 967 So. 2d 1112, 1114 (Fla. 4th DCA 2007)…………………………………………………………………………….28

*Kelynack v. Yamaha Motor Corp.*, 152 Mich. App. 105, 394 N.W.2d 17 (1986)…………………………………………………………………….47, 48, 49

*Latimer v. William Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618 (1986)……………………………………………………………..…47, 48

*Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1211 (6th Cir. 1981)………………………………………………………………...35, 36

*Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999)…………………………………………………..25, 26, 27

*Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513, 519–20 (1978)……………………………………………………………………...50

*Nielsen Co. (U.S.), LLC v. Success Sys., Inc*., 112 F. Supp. 3d 83, 103 (S.D.N.Y. 2015)……………………………………………………………....35, 36, 37

*Price Bros. Co. v. Charles J. Rogers Construction Co.*, 104 Mich.App. 369, 374–375, 304 N.W.2d 584 (1981)…………………………………………...…46

*Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA 1998)………….25

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 at 70- 71, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)………………………………………………………………….……26

*River Rouge Sch. Dist. v. Mestek, Inc.*, 48 UCC Rep. Serv. 2d 1036 (Mich. Ct. App. 2002)……………………………………………………………...33, 54

*Seminole Cnty. Tax Collector v. Domo, Inc.*, 618CV1933ORL40DCI, 2019 WL 1772108, at *2 (M.D. Fla. Apr. 23, 2019)……………………………….…..24, 25

*Severn v. Sperry Corp.*, 538 N.W.2d 50, 54 (Mich. Ct. App. 1995)…………...…46

*Severstal Dearborn, LLC v. Praxair, Inc.*, 899 F. Supp. 2d 667, 670 (E.D. Mich. 2012)……………………………………………………………………....39

*Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams*, 702 So. 2d 622, 622 (Fla. 4th DCA 1997)……………………………………………...……27

*Spicer v. Tenet Florida Physician Servs., LLC*, 149 So 3d 163, 167 (Fla. 4th DCA 2014)………………………………………………….………29, 30, 31

*Storfer v. Guarantee Tr. Life Ins. Co*., 666 F.3d 1277, 1278 (11th Cir. 2012)………………………………………………………………...11-12

*Temple Emanu-El of Greater Fort Lauderdale v. Tremarco Indus., Inc.*, 705 So. 2d 983, 984 (Fla. Dist. Ct. App. 1998)………………………………………...26

*Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1340 (S.D. Fla. 2022)………..…18

*Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 62-63 (2003)……….32, 33, 43, 44

*Winn-Dixie Stores, Inc v. Big Lots Stores, Inc*, No. 9:11-CV-80601-DMM, 2016 WL 2918152, at *5 (SD Fla, May 18, 2016)…………………………………..31

*Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1263 (S.D. Fla. 2019)…………………………...26

## Statues

MCL § 440.2711……………………………………………………………….35, 53
MCL § 440.2712……………………………………….…………….34, 35, 37, 38
MCL § 440.2719………………………………………37, 43, 44, 45, 46, 47, 52

## Other Authorities

2 Fla.Jur.2d Agency and Employment § 94 (1977)…………………………….19

## STATEMENT OF THE ISSUES

I.    Whether Meelunie's T&Cs were incorporated into the parties' Sales Contract when the Sales Contract provides language that references the T&Cs, the T&Cs were provided to SAIP before and after the execution of the Sales Contract, and when SAIP made interest payments in accordance with the T&Cs.

II.    Whether SAIP, as a merchant, has an available remedy under Meelunie's T&Cs after agreeing to those T&Cs, which exclude liability for lost profits and the cost of substitute products, and when the T&Cs provide SAIP with an exclusive remedy.

## INTRODUCTION

The District Court correctly ruled that Meelunie is not in breach and Meelunie's terms and conditions ("T&Cs") were incorporated into the parties' agreement, as permitted under Florida law. Sweet Additions Ingredient Processers, LLC ("SAIP"), a manufacturer of organic tapioca syrup sweetener, entered into a Sales Contract with Meelunie, a tapioca starch supplier, on September 16, 2019 ("Contract"). The Contract involved the supply of nearly 20 million pounds of organic tapioca starch in 2020. Despite SAIP's argument that it allegedly did not read

the T&Cs, the District Court correctly found SAIP was still bound by them.

Meelunie consistently provided SAIP, including at times directly to Ken Valdivia, ("Valdivia"), SAIP's president and partial owner of SAIP, with the T&Cs before and after the Contract was executed, which SAIP acknowledged and effectively ratified by paying interest charges on overdue payments. Delays in estimated delivery dates occurred in the first quarter of 2020 due to unforeseen events, but SAIP received sufficient inventory to satisfy all sales orders for the calendar year. By December 22, 2020, roughly 7.5 million pounds remained undelivered under the Contract because SAIP never requested the remaining product to be delivered.

The District Court correctly ruled that SAIP's alleged damages for cost of substitute product were excluded under the limitation of damages provision contained in the T&Cs. SAIP's assertion that excluding cost of substitute product or "cover" leaves it without any remedy is incorrect. In early 2021, Meelunie informed SAIP of possible delays in estimated delivery times. However, SAIP chose to source the product from different suppliers, reportedly purchasing roughly 5 million pounds at a higher cost, at the same time Meelunie had product available for SAIP to purchase. SAIP was required to purchase products from Meelunie. SAIP instead improperly circumvented the Contract to avoid payment of outstanding debt owed to Meelunie. Because the District Court found that Meelunie was not in breach,

SAIP's failure to purchase product from Meelunie and SAIP's sourcing products from different suppliers was a breach of the Contract, and SAIP is not entitled to remedies.

The District Court correctly determined that the limitation of damages provision does not render the Contract illusory. Both parties provided consideration when entering into the Contract. Therefore, the District Court's rulings should be affirmed.

## STATEMENT OF THE CASE

### I.  COURSE OF PROCEEDINGS AND DISPOSITIONS

On June 29, 2021, SAIP filed its complaint against Meelunie. (DE 1). On August 8, 2021, Meelunie filed its answer and affirmative defenses. (DE 8) and counterclaim against SAIP (DE 9). On August 31, 2021, Meelunie filed a counterclaim against SAIP (DE 18) and SAIP filed an answer on September 7, 2021. (DE 20).

On December 7, 2022, Meelunie filed a motion for summary judgment as to Plaintiff's complaint (DE 84) and a Statement of Material Fact. (DE 85). Also on December 7, 2022, SAIP filed a motion for partial summary judgment (DE 88) and statement of material facts. (DE 89). On December 21, 2022, Meelunie its respective responses in opposition (DE 92-93), and so did SAIP. (DE 93-97). On January 6,

2023, Meelunie filed its respective reply briefs (DE 101 – 104) and so did SAIP (DE 105-106).

On March 21, 2023, the Court entered an order granting in part and denying in part defendant's motion for summary disposition. The District Court concluded that the T&Cs were incorporated into and made part of the parties' agreement. (DE 121 at p. 7).

Additionally, Meelunie filed a motion *in limine* (DE 100), SAIP filed a response (DE 107), and Meelunie filed a reply. (DE 108). On March 20, 2023, the District Court entered an order, finding in part, that SAIP's expert will not be permitted to offer opinion testimony about SAIP's lost profits or damages and his report was excluded. (DE 120).

On June 7 and June 8, 2023, this matter proceeded to a bench trial. On October 31, 2023, the district court entered its final judgment in Meelunie's favor (DE 154) and findings of fact and conclusions of law. (DE 155). On November 27, 2023, SAIP filed a motion for new trial and to alter and amend the final judgment. (DE 156). Meelunie filed its response (DE 158), and SAIP filed its reply (DE 160). On January 3, 2024, the District Court denied SAIP's motion for new trial. (DE 163).

## II.    FACTUAL BACKGROUND

SAIP manufactures and sells organic tapioca syrup sweetener made with organic tapioca starch. (DE 155 at p. 1). Meelunie is a supplier of tapioca starch

("Product"). *Id*. Meelunie began supplying Product to SAIP in approximately 2012. (DE 85-2 at 13:1-5). During the course of their business relationship, Meelunie would e-mail SAIP with both the invoices for Product delivered and a copy of the T&Cs of the sale as attachments. (DE 85-5 at ¶ 3; DE 85-7). Meelunie provided SAIP, including Valdivia, with the T&Cs before and after the parties executed the Contract. (DE 93-16).

On September 16, 2019, the sophisticated merchant parties entered a Contract whereby Meelunie agreed to supply SAIP with nearly 20 million pounds of Product in 2020. (DE 155 at p. 2). Delivery was to be made in Minneapolis, Minnesota, and the shipments made between January and December 2020. *Id.* The Contract provided the following:

## SALES CONTRACT SMA015193

We herewith confirm having SOLD to you on our general conditions

PRODUCT : Organic Tapioca starch, food grade, Windmill brand

QUANTITY : 19,841,400 LB loaded in 360 FCL/40ft container(s) of 55,115 LB

PACKING : 40x25kg bags, Windmill brand net, Pallets

PRICE : USD 40.80 Per 100 LB , including packing

DELIVERY : DDP MINNEAPOLIS MN US - DIRECT, (Incoterms 2010)

SHIPMENT : January 2020 - December 2020

PAYMENT : Check, 45 days net from date of Invoice

REMARKS : Seller will cover Customs and Clearance prior to arrival.- The customer is responsible for the accessorial costs if the containers are not returned within the alotted time period. Number of free days are to be determined and Sweet Additions will be notified prior to arrival.

Yours sincerely,

MEELUNIE AMERICA INC.

Sweet Additions Ingredient Processor: Todd Watts        David Abbeg

*Todd Watts by Erik Ratloff*        *David Abbeg by Erik Ratloff*

Please send all Purchase Orders to orders@meelunie.com.

**Global Supplier Of Agricultural Ingredients**

On all our Sales contracts, our General Sales conditions apply. A copy of these conditions can be obtained upon request.

(DE 1-1). By signing the Contract, SAIP and Meelunie agreed to the T&Cs, which provided SAIP with an agreed upon exclusive remedy:

> 4.WARRANTIES. Goods sold by Meelunie America are the products of a reputable manufacturer and are in accordance with the manufacturer's warranty (copies of which will be furnished upon request) or customary practice, the repair or replacement of goods that may prove defective in material or workmanship. **The foregoing shall constitute the exclusive remedy of the Buyer** and the sole obligation of Meelunie America. Except as to title, THERE ARE NO

WARRANTIES, EITHER WRITTEN, ORAL, IMPLIED OR STATUTORY, relating to the described goods, which extend beyond that described in this paragraph. NO IMPLIED STATUTORY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE SHALL APPLY. (Emphasis added).

(DE 144-3 at ¶ 4). Also, the T&Cs provided SAIP with the following agreed upon limitation of liability provision:

**LIMITATION OF LIABILITY**. Meelunie America's liability on any claim for loss or damage arising out of this contract or from the performance or breach thereof or connected with the supplying of any goods hereunder, or their sale, resale, operation or use, whether based on contract, warranty, tort (including negligence) or other grounds, shall not exceed the price allowable to such goods or part thereof involved in the claim. Meelunie America shall not, under any circumstances, be liable for any labor charges without the prior written consent of Meelunie America. Meelunie America shall not in any event be liable, whether as a result of breach of contract, warranty, tort (including negligence) or other grounds, for special consequential, incidental or exemplary damages including, but not limited to, loss of profits or revenue, loss of use of the product or any associated product, cost of capital, cost of substitute products, facilities or service, downtime costs, or claims of customers of the Buyer for such damages….

(DE 155 at p. 7; DE 144-3). The Contract, by incorporating the T&Cs, does not guarantee delivery dates. (DE 144-3 at ¶ 3). The Contract provides that delivery dates are estimates. (DE 144-3 at ¶ 2). SAIP admits that Valdivia and SAIP's accounting team received the T&Cs before and after the Contract was executed. SAIP's Brief, p. 6.

In the first quarter of 2020, there were delays in estimated delivery dates due

to a warehouse shutdown in Thailand for the holidays.[1] (Trial Transcript Vol I at 136:14-20; DE 144-14; DE 144-15)[2]. Meelunie had no prior notice of the two-week holiday shutdown. (Trial Transcript Vol I at 136:21-25). In February 2020, delays in the estimated delivery dates were caused by protests in Vancouver. (Trial Transcript Vol I at 137:1-10; DE 144-16). SAIP was still receiving shipments of Product that were not delayed. (Trial Transcript Vol I, 132:1-3). SAIP had sufficient inventory on hand to satisfy all sales orders for calendar year 2020. (Trial Transcript Vol I at 133:8 – 135:21; DE 144-78).

As of August 2020, SAIP's request for delivery of Product was significantly reduced from the original forecast contained in the Contract. (Trial Transcript Vol II at 11:24 – 12:2, 21:3-6; DE 144-32). From August 2020 to December 2020, SAIP did not request delivery of the remaining 13 million pounds. (Trial Transcript Vol I at 148:1-19; DE 144-32).

Meelunie delivered Product without incident in the second, third, and fourth quarters of 2020. (DE 155 at p. 3). SAIP received all Product it requested in 2020 but it did not take the full contracted amount that year; by December 22, 2020, roughly 7.5 million pounds remained on the Contract. (DE 155 at p. 3).

---

[1] First quarter of 2020 was under a prior contract and has no relation to SAIP's claimed damages, and is irrelevant.

[2] DE 171 ("Trial Transcript Vo I") and DE 172 ("Trial Transcript Vol II") was ordered by Meelunie. However, the transcripts received do not have the Docket Number, and will be provided with Meelunie's Supplemental Appendix.

In January 2021, Meelunie notified SAIP of possible delays until May 2021 in estimated delivery times due to insufficient container issues as a result of the global supply crisis. (Trial Transcript Vol I at 95:15-23; DE 144-41). On February 8, 2021, Meelunie notified SAIP of the following: SAIPs December 2020 / early January 2021 volume arrived on schedule (DE 144-46); SAIP's late January /early February volume was reduced by about 100 metric tons to 225 metric tons (*Id.*); SAIP's mid to late February Product was rolled back several weeks; the vast majority was on waiting status; this was a critical delay that Meelunie was addressing (*Id.*); and greater volume is on schedule for late March and April but requires getting space allocated to Meelunie. *Id*. On February 12, 2021, Meelunie informed SAIP of delays in the delivery of the containers due to railway disruptions that were spreading. (DE 144-54). SAIP admitted it had problems obtaining containers through other sources. (Trial Transcript Vol I at 153:25 – 154:5).

In March 2021, SAIP contracted directly with tapioca starch manufacturer, Ubon Sunflower Company, Ltd., ("UBON"), for delivery of product. (DE 155 at p. 5). SAIP also sourced from Dahui Cambodia. (DE 100-8 at 33:12-21, 34:6-18; DE 100-9). SAIP purchased roughly 5 million pounds from UBON. (DE 155 at p. 5). The combined cost of the tapioca starch and freight totaled $73.60 per pound, $32.80 higher per pound than the price of the Meelunie fixed-price Contract. *Id*. SAIP paid $1,650,100.76 more than the Contract price to acquire the remaining balance of

5,030,795 pounds of organic tapioca starch that remained on the Contract when Meelunie made its last shipment to SAIP. *Id.* The first shipment from UBON arrived at the end of May 2021. *Id.* Meelunie also had Product available for purchase by SAIP in May 2021 and notified SAIP it would release the Product when the outstanding invoices were paid. *Id.* SAIP never purchased more Product from Meelunie. *Id.*

In May 2021, Meelunie notified SAIP of past due invoices totaling $949,767.44. (DE 155 at p. 5). Most invoices were almost 30 days past due. *Id.* There were also invoices for interest on the past due amounts. *Id.* The unpaid invoices for interest charges totaled $39,469.48, and as of June 9, 2023, accrued interest at 18% per annum totaled $352,108.78. *Id.*

Separate from the Contract, Meelunie extended credit to SAIP for its purchases. (DE 155 at p. 4). Meelunie gave SAIP a $1 million credit limit, which represented the maximum limit on SAIP's accounts receivable. *Id.* This credit limit began in February 2019. *Id.* The credit limit was backed by insurance. *Id.* Meelunie required SAIP to regularly pay down the credit limit to stay below the insured amount and to not go beyond 30 days past due. *Id.* Under the Contract, payments were to be made within 45 days of delivery. *Id.*

The T&Cs state, among other things, that Meelunie "can charge interest." (DE 144-3 at ¶ 3). In 2019, Meelunie began charging SAIP interest for overdue payments.

(DE 155 at p. 4). The T&Cs permitted interest at 18% per year if payment was not made when due. *Id.* The e-mails for interest charges contained both the invoices and sometimes the T&Cs as attachments. (DE 85-5 at ¶ 5; DE 85-10). SAIP paid the interest invoices pursuant to the T&Cs. (DE 85-3 at 26:13- 27:19; DE 85-11).

SAIP received the T&Cs, and Valdivia testified that it was the job of employes Samatha Swiderski and Deb Higgs to review and pay the invoices. (DE 93-10 at 37:25- 39:4). Valdivia was sure the interest invoices were paid because Meelunie kept delivering to SAIP. (DE 93-10 at 37:25- 39:4, 58:16- 59:2; DE 93-16). SAIP's is incorrect that Meelunie could not ship starch for the second half of 2021 (SAIP's Brief, p. 4). Rather, SAIP sourced from different suppliers when Meelunie had Product available in May 2021 because SAIP did not want to pay Meelunie its overdue payments.

SAIP's damage claims changed throughout the course of litigation. SAIP's complaint sought lost profits. However, SAIP for the first time sought the cost of substitute product. (Trial Transcript Vol I at 119:1 – 124:1, 156:23 – 159:21).

Based on the facts and subsequent arguments, the District Court's rulings should be affirmed.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*, "applying the same legal standards that bind the district court." *Storfer v. Guarantee Tr. Life*

*Ins. Co.*, 666 F.3d 1277, 1278 (11th Cir. 2012). "Under Florida law, the interpretation of contracts is a question of law if the contractual language is clear and unambiguous." *Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060,1066 (11th Cir. 2004)* (citation omitted).

On an appeal from a judgment in a bench trial, this Court's review of conclusions of law is de novo. *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005). This Court also reviews de novo the district court's application of the law to the facts. United States v. Frank, 599 F.3d 1221, 1228 (11th Cir. 2010). The district court's findings of fact, on the other hand, are evaluated under the clear-error standard. *HGI*, 427 F.3d at 873. "We will not find clear error unless our review of the record leaves us 'with the definite and firm conviction that a mistake has been committed.'" *Coggin v. Comm'r of Internal Revenue*, 71 F.3d 855, 860 (11th Cir. 1996).

## SUMMARY OF ARGUMENT

The District Court correctly ruled that the T&Cs were incorporated into the parties' agreement. A contract can incorporate terms from other writings if the contract clearly shows the intent to include such terms. The Contract between the parties expressly incorporated Meelunie's General Sales Conditions, which were regularly provided to SAIP with shipping invoices. Despite SAIP's argument that its senior management did not read these terms, the District Court found that SAIP was

still bound by them, as ignorance of a contract's terms does not exempt a party from being bound by them.

Additionally, SAIP ratified the T&Cs by paying interest charges in accordance with them. Starting in May 2019, Meelunie began charging interest on overdue payments, and SAIP paid these interest charges. By doing so, SAIP effectively ratified the T&Cs each time it paid an interest invoice. Once a party has adopted a contract through its actions, it is equitably estopped from repudiating it.

The District Court correctly ruled that SAIP's "cover" damages, or cost of substitute products, were excluded under the T&Cs agreed upon by the merchant parties. SAIP's focus on whether cover damages constitute direct or consequential damages is irrelevant because the merchant parties explicitly agreed to exclude cost of substitute product. Importantly, SAIP did not address the two-part test for unconscionability, which the District Court thoroughly examined and found SAIP failed to satisfy to exclude the T&Cs and the limited liability provision.

SAIP's assertion that excluding cover leaves it without a remedy is incorrect. The T&Cs provided an exclusive remedy for the repair or replacement of defective products not to exceed the price of the product. SAIP's inability to avail itself of this remedy does not mean it is left without a remedy. The agreement to exclude certain damages does not negate the availability of the agreed exclusive remedy.

The District Court correctly determined that the limitation of damages provision does not render the Contract illusory. Both parties provided consideration when entering into the Contract, having a history of business transactions involving Product. SAIP's dissatisfaction with the Contract terms does not justify rewriting the Contract to provide remedies that were contractually precluded. The Contract includes a limited warranty with an exclusive remedy, obligating Meelunie to replace or repair defective products not to exceed the product price, thus providing additional consideration and confirming the Contract is not illusory.

SAIP's argument that Meelunie could have refused delivery without consequences is incorrect. Both parties are bound by the agreed-upon T&Cs. While SAIP agreed that Meelunie would not be responsible for the "cost of substitute product," Meelunie never breached the parties' Contract. Rather, SAIP breached the Contract by sourcing substitute product from a different supplier when Meelunie had Product available, in order to avoid paying its outstanding balance owed to Meelunie. The District Court's rulings should be affirmed.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY RULED THAT THE T&CS HAD BEEN INCORPORATED INTO THE AGREEMENT

The District Court properly ruled on summary judgment that "the Terms and Conditions were incorporated into and made part of the parties' agreement. (DE 121

at p. 7). The District Court correctly reaffirmed its ruling in its findings of fact and conclusions of law. (DE 155 at p. 2)

### A. Meelunie's T&Cs are enforceable

This Court has held that a contract incorporates another document by reference if it "(1) specifically provides that it is subject to the incorporated collateral document and (2) the collateral document to be incorporated" is "sufficiently described or referred to in the incorporating agreement so that the intent of the parties may be ascertained." *Global Quest, LLC v. Horizon Yachts, Inc*., 849 F.3d 1022, 1033 (11th Cir. 2017) (*quoting BGT Grp. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011)). The first requirement "mandates that 'there must be some expression in the incorporating document of an intention to be bound by the collateral document.'" *Id. (quoting Kantner v. Boutin*, 624 So. 2d 779, 781 (Fla. 4th DCA 1993)). On the second requirement, this Court has stated "[i]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document . . . is to be interpreted as part of the writing." *Id. (quoting Kantner*, 624 So. 2d at 781).

Here, the Contract "specifically provides that it is subject to the incorporated collateral document," Meelunie's T&Cs. The Contract also "expressly refers to and sufficiently describes another document." The Contract signed by Valdivia states, "We herewith confirm having SOLD to you **on our general conditions**. (DE 144-

8) (emphasis added). The Contract further states, "On all our Sales contracts, our General Sales conditions **apply**. A copy of these conditions can be obtained upon request." *Id.* (emphasis added). Indeed, the T&Cs form the basis of the Contract. Moreover, SAIP historically received a copy of the T&Cs with each invoice.

It is undisputed that Meelunie sent the T&Cs to SAIP with shipping invoices, both before and after the execution of the Contract. (DE 121 at p. 7). SAIP argued that senior management received but did not read the T&Cs, and therefore, the T&Cs should not be incorporated into the parties' agreement. However, the District Court correctly addressed this baseless argument in the following footnote:

> Even taking as true SAIP's factual contention that its senior management never paid attention to invoices and delegated control of invoices to the accounts receivable department, SAIP confirmed that the sale was subject to Meelunie's general conditions and was obligated to review them. Willful ignorance is not an avoidance of agreed upon terms.

(DE 121 at p. 7, fn. 5).

The District Court properly ruled that the T&Cs had been incorporated into and made part of the parties' agreement and are enforceable against SAIP.

## B. SAIP ratified Meelunie's T&Cs

SAIP acknowledged and ratified Meelunie's T&Cs by paying interest pursuant to the T&Cs. The T&Cs provide, "If payment is not made when due, Buyer agrees to pay a charge on the amount past due at the rate of 1-1/2% per month (18%

per annum) or the maximum lawful rate, whichever is less. Nothing herein shall be deemed to extend or otherwise modify Buyer's obligations to make payment when due." (DE 143-3).

In May 2019, Meelunie began to charge interest for overdue payments. (85-2 at 44:9- 46:25; DE 85-9). In September 2019, SAIP paid interest charge invoices at the exact rate contained in the T&C's. (DE 85-3 at 26:13- 27:19; DE 85-11). Each time that SAIP paid invoiced interest charges in 2019 and 2020, SAIP ratified and accepted the T&Cs.

"[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). Here, SAIP acknowledged and ratified the T&Cs by accepting the benefit of paying 18% interest on past due invoices without question or objection (as specifically provided in the T&C's) rather than permitting Meelunie to halt supply for failure of timely payment. SAIP cannot now avoid the burdens of the T&C's damages limitation.

### C. Ignorance of not reading a contract does not exempt SAIP from being bound by its terms

SAIP makes much noise about "small print" references in the Contract and that Valdivia never read Meelunie's emails containing the T&C's because they were

sent to SAIP's accounting department. This noise was properly filtered by the District Court. Moreover, SAIP admits that:

a. "in late April of 2019, while the parties were operating under the sales contract for 2019, Meelunie sent an email to . . . Valdivia . . . and Deborah Higgs, SAIP's controller and head of accounting, warning that Meelunie would soon start charging interest on past due invoices pursuant to its 'sales terms and conditions,' which it attached to the email." SAIP's Brief p. 6 (DE 85-3 at p. 6; DE 93-9) (hereinafter, the "Terms and Conditions");

b. "Starting in mid-2019 and **continuing into 2020**, Meelunie would from time to time email Higgs and/or her accounting assistant, Samatha Swiderski (with a copy to Valdivia), with interest invoices which attached the Terms and Conditions." SAIP's Brief p. 6 (DE 85-3 at p. 6; DE 93-11; 93-16).

As the District Court properly noted, "[w]illful ignorance is not an avoidance of agreed upon terms." (DE 121, p. 7, fn. 5). Indeed, "a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." *Citizens Prop. Ins. Corp. v. Eur. Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 777–78 (Fla. Dist. Ct. App. 2010) *quoting Sapp v. Warner*, 105 Fla. 245, 141 So. 124, 127 (1932). Further, "[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms, and conditions.' *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1340 (S.D. Fla. 2022).

Here, Valdivia signed a Contract with two references to conditions which applied to the Contract which he could obtain "upon request" and which were admittedly in Valdivia's possession. Yet, SAIP not only seeks to excuse the alleged shutting of Valdivia's eyes to this information, but seeks to excuse the receipt of such information by other employees of SAIP. This argument also fails.

This Court has recognized that "the general principle of agency law that knowledge of, or notice to an agent or employee is imputed to the principal when it is received by the employee within the scope of her employment, and when it is in reference to matters over which the employee's authority extends." *Computel, Inc. v. Emery Air Freight Corp*., 919 F.2d 678, 684–85 (11th Cir. 1990), *citing Anderson v. Walthal*, 468 So.2d 291 (Fla. 1st DCA 1985); and 2 Fla.Jur.2d Agency and Employment § 94 (1977).

Higgs was SAIP's controller and head of accounting and had authority to authorize payment of Meelunie's invoices and did not have to consult with anyone at SAIP to make payments. (DE 87-4 at 12:4-10). Higgs had to get approval from Valdivia to pay the interest invoices which attached the T&C's. (DE 87-4 at p. 25:17 – 26:12, 27: 17-19).

In short, whether Valdivia read the T&Cs is irrelevant, and it is undisputed that Meelunie provided SAIP with the T&Cs on multiple occasions. The District Court summary judgment ruling was correct.

## D. SAIP's cited cases are distinguishable

SAIP's cites many cases with little analysis which are either distinguishable, inapplicable or provide support for Meelunie's arguments. Each of the following cases cited by SAIP are either distinguishable from this case or provide support for Meelunie's position that the T&Cs were incorporated into the Contract for the following reasons.

In the Contract between Meelunie and SAIP, the T&Cs were clearly incorporated and acknowledged by both parties. The Contract explicitly states that it was "SOLD to you on our general conditions," and that "General Sales conditions apply," making the parties' intent to be bound by the T&Cs clear and unequivocal. Meelunie provided the T&Cs to SAIP both before and after the Contract's execution, ensuring there was no confusion about which T&Cs were being referred to. Additionally, the Contract provided that a copy of the T&Cs could be obtained upon request.

SAIP ratified these T&Cs by paying interest charges pursuant to them, further indicating its acceptance and acknowledgment. Despite SAIP's argument about the lack of capitalization in the incorporated language, the Contract's language was clear and incorporated the T&Cs properly, which were available for inspection at any time upon request. The repeated provision of the T&Cs and SAIP's actions of paying interest charges pursuant to these conditions further affirmed their acceptance and

incorporation into the Contract.

## 1. *BGT Group*

SAIP relies on the case of *BGT Group, Inc. v. Tradewinds Engine Services, LLC*, 62 So. 3d 1192, 1194 (Fla. 4th DCA 2011)*,* to argue that Meelunie's T&Cs should not be incorporated into the Contract. However, *BGT Group* is distinguishable. In *BGT Grp., Inc.*, the invoice stated, in part: "ALL ORDERS ARE SUBJECT TO ATTACHED BGT T&CS." *BGT Group, Inc.,* 62 So. 3d at 1194. Additionally, *BGT Group*, the invoice and quote stated that the T&Cs were attached but "[n]o T&Cs were attached." *Id.*

## 2. *Excess Risk*

SAIP cites one sentence from *Excess Risk* to argue that explicit language is required for the parties to be bound by a collateral document. SAIP's Brief, p. 18. However, SAIP fails to provide the complete ruling where *Excess Risk* court found that "Florida law requires that there must be some expression in the incorporating document ... of an intention to be bound by the collateral document .... A mere reference to another document is not sufficient to incorporate that other document into a contract, particularly where the incorporating document makes no specific reference that it is 'subject to' the collateral document.'" *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1333 (S.D. Fla. 2004) (citations

and quotations omitted). A contract must contain "words ... indicating an intention that [the parties] between themselves, [agree] to be bound by the [collateral document]." *Id.* (citations and quotations omitted).

The subject contract in *Excess Risk* has a statement that says, "as specified" and does not state that the party "has been selected subject to the obligations in the subject agreement." *Id.*

### 3. *Harvey*

SAIP next relies on *Harvey* to support its position that Meelunie's T&Cs are not incorporated into the Contract. Specifically, SAIP relies on one sentence in *Harvey* that cites *Affinity Internet, Inc.*[3] *Harvey* found the following: "mere reference to another document is insufficient to incorporate the other document into a contract. *Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288 (Fla. 4th DCA 2006). *Harvey As Tr. of Russel A. Schlegel Revocable Living Tr. v. Lifespace Communities, Inc.*, 306 So. 3d 1248, 1251 (Fla. Dist. Ct. App. 2020)." Because the cited portion relies on *Affinity Internet*, this case is distinguishable.

In *Harvey*, the parties entered into two separate contracts and only one contract contained an arbitration clause. *Harvey As Tr. of Russel A. Schlegel Revocable Living Tr. v. Lifespace Communities, Inc.*, 306 So. 3d 1248, 1249 (Fla.

---

[3] *Affinity Internet, Inc.* is distinguishable and is addressed below.

5th DCA 2020). The 2018 contract that plaintiff sued on did not contain an arbitration clause. *Id.* The Court noted that the 2018 agreement references the 1993 agreement, but the 2018 agreement does not either wholly incorporate the terms of the 1993 agreement or make the 2018 agreement subject to the 1993 agreement terms. *Id.* at 1251. The court further found that "none of the references can be reasonably construed as expressing an intention to be bound by a collateral document's terms." *Id.*

### 4. *Gustavvson*

SAIP relies on *Gustavvson v. Wash. Mut. Bank, F.A.*, 850 So. 2d 570, 573-574 (Fla. 4th DCA 2003) for the position that T&Cs must be provided in order to be incorporated into a contract. *Gustavvson* was addressed by this Court *in Dellacasa, LLC v. John Moriarty & Associates of Florida, Inc.*, 07-21659-CIV, 2008 WL 299024, at *13 (S.D. Fla. Feb. 1, 2008) and is distinguishable from this case. In *Gustavsson,* the bank sent the plaintiff ("bank customer") a facsimile including the front page of a bank signature card but not the reverse side. *Gustavsson v. Washington Mut. Bank, F.A.*, 850 So. 2d 570, 571 (Fla. 4th DCA 2003). The bank customer signed the document and returned it. *Id.* After a dispute arose between the bank customer and the bank, the bank sought to enforce an arbitration provision contained in the bank's disclosure statement. *Id.* at 572.

The reverse side of the bank card contained language incorporating by

reference the disclosure statement. *Id.* The court found that the bank could not

enforce the arbitration provision because the bank customer did not have notice

of the incorporation of the disclosure statement. **"Since the [b]ank did not refer**

**to arbitration, or expressly refer and sufficiently describe another document**

**containing an arbitration requirement, it cannot now ask [the court] to put in a**

**term and condition when it failed to do so and to which [the bank customer] did**

**not assent."** *Id.* at 574. (emphasis added).

### 5. *Affinity Internet, Inc.*

*Affinity Internet, Inc.* is distinguishable from this case, and was addressed in

*Seminole Cnty. Tax Collector v. Domo, Inc.* In *Seminole Cnty Tax Collector*, the

Middle District of Florida found the following:

> The Court rejects Plaintiff's invitation to follow *Affinity* and
> *Viacost.com*. First, the Service Order, which incorporated the
> arbitration provision, **was a relatively short document**, with only
> three paragraphs of terms listed on a two-page document. (Doc. 4-
> 1).[2] The *Affinity* court gave only a passing description of the
> underlying contract and did not reflect that the contract at issue there
> was **as terse** as the Service Order. More fundamentally, the
> *Affinity* court noted that "the intent of the parties is determinative"
> and, on the facts present there, the contract language did not evince
> the parties' intent to incorporate the arbitration clause. *Affinity*, 920
> So. 2d at 1288. **Here, the Service Order demonstrates a clear**
> **intent to be bound by the Service Agreement. The Service Order**
> **contained only *three* paragraphs of terms, one of which**
> **unequivocally states the "Service Order is subject to the Domo**
> **Service Agreement" located at a hyperlink that was underlined**
> **and emphasized in blue font.** (Doc. 4-1, p. 2). The Court is
> unpersuaded by Plaintiff's arguments that the Service Order does not

reflect an intent to be bound by the Service Agreement and that the "subject to" language was equivocal.

*Seminole Cnty. Tax Collector v. Domo, Inc.*, 618CV1933ORL40DCI, 2019 WL 1772108, at *2 (M.D. Fla. Apr. 23, 2019) (emphasis added). Here, the Contract is a short and terse document, and is only one page. Also, the Contract *unequivocally* incorporates the T&Cs. Thus, like in the *Seminole Cnty. Tax Collector* case, the Contract demonstrates a clear intent to be bound by the T&Cs.

Any argument by SAIP that a contract must state "subject to" to incorporate the T&Cs is without merit. A contract does not need to state that it is "subject to" the provisions of the collateral document to incorporate its terms. *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999); *see Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA 1998) (holding that no particular "magic words" are required to incorporate a document by reference).

### 6. *Dependable Component*

SAIP next relies on *Dependable Component* to support its position that the T&Cs are not incorporated into the Contract. Similar to the cases above, *Dependable Component* is distinguishable from this case. In *Dependable Component,* the defendant is attempting to enforce an arbitration clause that was provided in the T&Cs. *Dependable Component Supply Corp. v. Lear Corp*., 06-61105-CIV, 2007

WL 9700500, at *2 (S.D. Fla. Feb. 20, 2007), *report and recommendation adopted*, 06-61105- CIV, 2007 WL 9698314 (S.D. Fla. May 14, 2007).[4]

In *Dependable Component*, this Court next addressed *Temple Emanu-El of Greater Fort Lauderdale*, 705 So. 2d at 983. In *Temple*, "[o]n appeal, the court held that the arbitration clause contained within the warranty had not been incorporated by reference into the contract because (1) the agreement between the temple and Tremarco did not state that the agreement was "subject to" the Firestone warranty; and, (2) no words in the contract indicated that the temple and Tremarco agreed, between themselves, to be bound by the warranty and its arbitration clause." *Id.* at *7.

This Court in *Dependable Component Supply Corp* next addressed *Mgmt. Computer Controls, Inc.*, which supports Meelunie's position on incorporating the T&Cs on the Contract. *In Mgmt. Computer Controls*, on "appeal the court held that the venue provision had been incorporated by reference into the parties' contract because the contract contained more than a mere reference to the license agreement,

---

[4] An arbitration provision does not apply here. Notably, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Y*tech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1263 (S.D. Fla. 2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 at 70- 71, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)). An arbitration clause will only be upheld if it represents the parties' "clear and unmistakable" intent to allow issues of arbitrability to be decided by an arbitrator. *Id.* at 1264.

and because the general language of the incorporating clause revealed the parties' intent to be bound by the terms of the license agreement." *Id.* at \*8.

The *Mgmt. Computer Controls* court "concluded that the phrase included on the contracts, that '[a]ny MC License Agreement governing the use of and normally packaged with any MC software is incorporated herein by reference, *as though fully set forth*,' constituted language that specifically expressed the parties' intent to be bound by the License Agreement." *Id.* Also, the *Mgmt. Computer Controls* court found that there could not have been confusion as to which license agreement was being referenced by the incorporation language, because, *inter alia*, the license agreement was actually provided with the software. *Id.*

Lastly, the Court in *Dependable Component Supply Corp* addressed *Sharpe*. The issue in *Sharpe* was "whether the parties to a partnership agreement can agree to submit even the question of partnership dissolution to arbitration and thereby give up the right to have the court consider the question." *Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams*, 702 So. 2d 622, 622 (Fla. 4th DCA 1997). "In holding that the arbitration provision had been incorporated, the court reasoned that (1) the text of the letter agreement and the partnership agreement was clear and unequivocal; (2) the letter bound Sharpe to all the provisions of the partnership agreement with the exception of those sections which had been specifically excluded; and, (3) the text of the letter agreement was legally sufficient to incorporate by

reference the Partnership agreement and to evidence an agreement to arbitrate." *Dependable Component Supply Corp. v. Lear Corp.*, 06- 61105-CIV, 2007 WL 9700500, at *8 (S.D. Fla. Feb. 20, 2007), *report and recommendation adopted*, 06-61105-CIV, 2007 WL 9698314 (S.D. Fla. May 14, 2007) (citations omitted).

### 7. *Kaye*

SAIP cites *Kaye*, which found that "the words 'part of these specifications' and 'this contract' unambiguously indicate the parties' intention to be bound by the [referenced document]." *Kaye v. Macari Bldg. & Design, Inc.*, 967 So. 2d 1112, 1114 (Fla. 4th DCA 2007). The Contract at issue here unambiguously indicates the parties' intention to be bound by the Contract and its T&C's.

### 8. *Avis Budget*

SAIP relies on *Avis Budget*, another arbitration enforcement case, to improperly argue that the Contract must use a "specific description" to incorporate a collateral document. SAIP's Brief, p. 23. However, this is not the holding in *Avis Budget*. The *Avis Budget* Court reaffirmed that "Florida law requires only that the incorporated document be 'sufficiently described or referred to in the incorporating agreement.'" *Bacon v. Avis Budget Group, Inc*, 357 F Supp 3d 401, 423 (DNJ, 2018) (citing *BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So.3d 1192, 1194 (Fla. Dist. Ct. App. 2011). *Avis Budget* further found:

> The plaintiff must receive an incorporated document, or else be given

clear direction on how to access it, before signing the agreement that allegedly incorporates that extrinsic document. Defendants Avis and Payless failed to provide Geary and Wheeler with the necessary access to the Rental Jackets here. They were not given the Rental Jackets until after they signed their Rental Agreements. The Rental Agreements did not describe the Rental Jacket or state where it could be found.

*Id.* at 424. As for inspection, the Court in *Avis Budget* found that "[t]he Rental Jackets were not otherwise meaningfully available for inspection; they were located on the desk underneath the rental counter, partially out of view; the text was upside-down from the customer's perspective; and the Rental Jackets did not actually bear the title 'Rental Jacket.'" *Id.* at 425.

Thus, *Avis Budget* ultimately found that the U.S. Agreement "makes no more than a bare reference to the existence of the Rental Jacket, and that is insufficient under Florida law of incorporation by reference, which "requires more than simply making reference to another document in a contract." *Id.* (citations omitted).

### 9. *Spicer* and *Calderon*

SAIP cites *Spicer* and *Calderon*, which are distinguishable from our present case. *Calderon* relies on *Spicer* and *Spicer* in turn, relies heavily on *BGT*, where *BGT* failed to provide the T&Cs during the negotiating process. *Spicer v Tenet Florida Physician Servs., LLC*, 149 So 3d 163, 167 (Fla. 4th DCA 2014). *BGT* was addressed above. However, SAIP conveniently left out a *BGT* ruling that was

addressed in *Spicer*. Specifically, when relying on *BGT*, the *Spicer* Court noted that the T&Cs were not incorporated into the agreement since "BGT, as drafter of the documents, did not intend to incorporate any T&Cs where it did not provide a specific description of them *or* attach them to the quote and purchase order." *Id.* (citing *BGT to Tradewinds*. 62 So.3d at 1195).

Notwithstanding the above, *Spicer* is distinguishable. In *Spicer*, the incorporation language named the collateral document, but the collateral document was not provided to the plaintiff at the time the plaintiff executed the contract and the contract incorporating the collateral document did not tell the plaintiff where the collateral document could be found. *Id.* at 167. The *Spicer* court noted that "cases finding sufficient description of a collateral document to create an incorporation by reference involve more detailed descriptions of the collateral document, *or where the document could be found.*" *Id.* (emphasis added; citation omitted).

In *Calderon*, the court noted that the "face page" of the agreement contained "less than Spicer's employment agreement". *Calderon v Sixt Rent a Car, LLC*, No. 19-CV-62408, 2020 WL 700381, at *6 (S.D. Fla. Feb. 12, 2020), *aff'd*, 5 F.4th 1204 (11th Cir. 2021). The face page "made only a passing reference to the Rental Jacket, with nothing more-not even a gratuitous, open-ended invitation to contact a human resources-like division with any questions." *Id.* "Whether the Face Page

'sufficiently described' the Rental Jacket and, therefore, whether Calderon was deemed to have read and accepted the terms of the entire "Rental Agreement" is something properly left to the province of the factfinder. *Id.* at *7 (SD Fla, February 12, 2020).

### 10. *Winn-Dixie*

SAIP cites *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.*, which is distinguishable from our present case. In that case, Court relied on *BGT* to find that the Winn-Dixie lease did not properly incorporate by reference a collateral document. *Winn-Dixie Stores, Inc v Big Lots Stores, Inc*, No. 9:11-CV-80601-DMM, 2016 WL 2918152, at *5 (SD Fla, May 18, 2016). The Winn-Dixie lease did not provide that the lease was "subject to" or "did not name the document to which the term referred".

### 11. *Gomez*

SAIP next cites *Gomez*, which is distinguishable. The cited portion of *Gomez* in SAIP's Brief relied on *Gustavsson* and *BGT*, which have previously been addressed and distinguished from our case. In *Gomez*, receipts contained language on the front referencing the T&Cs, but Gomez never received the T&Cs. *Gomez Packaging Corp v Smith Terminal Warehouse Co, Inc*, No. 11-21992-CIV, 2011 WL 13223733, at *8 (S.D. Fla. Sept 12, 2011).

## II.  THE DISTRICT COURT PROPERLY RULED THAT SAIP AGREED TO EXCLUDE COST OF SUBSTITUTE PRODUCTS UNDER THE T&CS

The District Court properly found that "[t]here is no evidence in this case that the parties had unequal bargaining power or that SAIP could not obtain organic tapioca starch elsewhere. Thus, the required procedural unconscionable is not met. The Court is, therefore, unable to declare the Terms and Conditions unconscionable or to otherwise disregard the Limitations of Liability agreed to by the parties." (DE 155 at pp. 9-10). The District Court also correctly found that "[b]ecause the Terms and Limitations exclude liability for lost profits and cost of substituted products, SAIP has not presented evidence of recoverable damages necessary to establish a breach of contract." *Id.* at p. 10.

SAIP's Brief ignores the fact that the parties are sophisticated merchants who have been doing business together for years under the agreed upon terms and conditions. "[P]arties are generally free to agree to whatever they like [in a contract] and, in most circumstances, it is beyond the authority of the courts to interfere with the parties' agreement." *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 62-63 (2003) (rejecting a 'rule of reasonable expectations" for interpreting contracts)." (DE 155 at pp. 7-8); *see also Anaheim Indus, Inc v Gen Motors Corp*, No. 01-06-00440-CV, 2007 WL 4554213, at *9–10 (Tex. App. Dec 20, 2007) (a case

involving UCC claims and Michigan law that cites *Wilkie,* 469 Mich. at 62-63, 664 N.W.2d at 787-88).

As a sophisticated merchant who agreed to exclude cost of substitute products, SAIP had the benefit of the bargain of the parties' Contract. The "essential purpose" of a limited warranty…is to provide the seller the opportunity to provide the buyer with the substantial benefit of its bargain by supplying goods that conform to the sales agreement while limiting the seller's exposure for damages that might otherwise be available. *River Rouge Sch. Dist. v. Mestek, Inc.*, 48 UCC Rep. Serv. 2d 1036 (Mich. Ct. App. 2002) (emphasis added). In other words, the agreed upon exclusive remedy was a remedy that was available to SAIP.

SAIP's Brief focuses on whether cost of substitute product a/k/a "cover" is either consequential or direct damages. However, SAIP fails to acknowledge that the merchant parties specifically agreed to exclude "cost of substitute products." Therefore, it is irrelevant whether cover is a consequential or direct damage.

Additionally, SAIP fails to address Michigan's two-part test for finding unconscionability in a contract term, which was thoroughly and properly addressed by the District Court. (DE 155 at pp. 9-10). Because SAIP failed to satisfy Michigan's two-part test for finding unconscionability in a contract term, the District Court properly ruled that SAIP's dover damages were excluded under the T&Cs.

SAIP improperly argues that by excluding cover, SAIP is left without a remedy. This is not true. The merchant parties agreed to an exclusive remedy, the replacement or repair of the defective product. Because the circumstances here do not allow SAIP to use the exclusive remedy that it contracted for does not mean SAIP has no remedy. Therefore, the District Court properly ruled that SAIP'S cover damages were excluded under the T&Cs.

## A. SAIP agreed to exclude cost of substitute products

### 1. The District Court properly found that MCL §440.2712(2) does not apply

SAIP argues that cost of substitute product or "cover' is not properly considered consequential damages because MCL §440.2712(2) treats them as separate elements of damages. The District Court correctly addressed this argument raised by SAIP and found the following:

> The Court also disagrees that M.C.L.A. §440.2712(2) applies in this case. That section applies to when "circumstances cause an exclusive or limited remedy to fail of its essential purpose." The limitations of damages clause in the T&Cs is not an exclusive or limited remedy such as a limited warranty that could provide a remedy under certain circumstances; it is an agreement by the parties that certain damages, including the cost of substitute goods, will not be available to the purchaser. There was no agreement for a specific remedy: the agreement rejected an otherwise available remedy. For this reason, the cases cited by SAIP are inapposite.

DE 163 at p. 5. SAIP argues that the District Court improperly determined that

SAIP's cover damages were encompassed as consequential damages by the phrase "cost of substitute products." SAIP's Brief, p. 31. However, the District Court correctly identified that how the cost of substitute products is classified is irrelevant: the merchant parties agreed to exclude it and SAIP failed to establish Michigan's two-part test for finding unconscionability in a contract term. (DE 155 at pp. 8-10).

The District Court also correctly addressed SAIP's argument that MCL §440.2712(2) treats the cost of substitute products as separate elements of damages by providing the following:

> Under the U.C.C., when a seller fails to make delivery "the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid (a) 'cover' and have damages under the next session as to all the goods affected whether or not they have been identified to the contract…." M.C.L.A. § 440.2711(1). If the buyer chooses to purchase substitute goods, he "may recover from the seller the difference between the cost of cover and the contract price together with any incidental or consequential damages … but less expenses saved in consequence of seller's breach." M.C.L.A. § 440.2712 (2).

(DE 163 at p. 5, fn. 1).

To support its position, SAIP erroneously argues that cover damages are not incidental or consequential damages and relies on *Mead Corp* and *Nielsen.* SAIP's Brief, p. 31. However, these cases are distinguishable. SAIP contends that *Mead Corp* held that "damages falling within the concept of 'cover'" do not "come under

the definition of consequential damages." SAIP's Brief, p. 31. However, *Mead Corp* did not find that cover is not a consequential damage. Rather, the Court noted that the parties could not agree as to whether or not cover was a consequential damage due to an ambiguity and left the issue to be decided for the trier of fact. *Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1211 (6th Cir. 1981) (relying on Ohio law and UCC, and not Michigan). Here, there is no ambiguity as to "cost of substitute products". The merchant parties agreed to exclude the cost of substitute products as damages.

*Nielsen* is also distinguishable from this case for two reasons. First, *Nielsen* involves contracts for services and not the UCC. Second, *Nielsen* applied New York law and not Michigan. Third, SAIP improperly cites *Nielsen*. SAIP's Brief argues that Nielsen found that special, incidental, consequential, indirect, punitive or exemplary damages refer to damages beyond those flowing from the contract in contrast to direct or general damages. SAIP's Brief, p. 31.

However, this is not the holding of *Nielsen*. Rather, SAIP takes portions from the parties' agreement to create this argument. Specifically, the *Nielsen* parties' agreement provides, "Section 8.1, of the GSA (General Services Agreement") exculpates the parties from liability for special, incidental, consequential, indirect, punitive or exemplary damages *including but not limited to* ... lost profits." *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 103 (S.D.N.Y. 2015).

Thus, *Mead Corp* and *Nielsen* are distinguishable.

SAIP next argues that Michigan's UCC distinguishes between "cost of cover" damages and "incidental or consequential damages" based upon the language of MCL §440.2712(2), which states: "The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 2715),1 but less expenses saved in consequence of the seller's breach." However, as argued above, MCL §440.2712(2) does not apply to the present case, and it is irrelevant as to how cover is categorized because the merchant parties agreed to exclude it, and SAIP has failed to satisfy Michigan's two-part test for finding unconscionability in a contract term.

SAIP cites *Chemetron* (SAIP's Brief, p. 33) to support its position that MCL 2719(2) applies to this case. However, *Chemetron* is distinguishable from our present case because the defendants' exclusive remedy would force it to commit assets of $625,564 (increased cost of product increased freight costs) and forgo profits of $247,929 from April, 1970 through December, 1973 alone, for to continue to receive whatever product McLouth could make available, while Chemetron could not cancel the contract until the end of the renewal term. *Chemetron Corp. v. McLouth Steel Corp., 381 F. Supp. 245, 251 (N.D. Ill. 1974), aff'd, 522 F.2d 469 (7th Cir. 1975)*. This was not what the parties could have

intended. *Id.*

Here, SAIP agreed to an exclusive remedy that Meelunie would repair or replace defective goods. SAIP was free to cancel the Contract and/or seek product from other sources. Thus, SAIP's agreed upon exclusive remedy provides SAIP with a reasonable protection against a breach.

SAIP further argues that the "district court erroneously allowed SAIP's cover damages to be excluded as constitute 'cost of substitute products,' part of Meelunie's defined consequential damages." SAIP's Brief, p. 34. As set forth above, the categorization of the cost of substitute products is irrelevant because the merchant parties agreed to exclude them, and SAIP has failed to satisfy Michigan's two-part test for finding unconscionability in a contract term.

Based on the foregoing, the District Court properly found that MCL §440.2712(2) does not apply.

## 2. SAIP improperly attempts to classify "cost of substitute products" as direct damages using *Noscitur a Sociis*

SAIP argues that the associated-words canon (*noscitur a sociis*) should be applied to read "cost of substitute products" as direct cover damages and not consequential damages. SAIP's Brief, p. 35. SAIP takes a misguided approach by arguing that *noscitur a sociis* should apply because the words surrounding "cost of substitute products" are consequential damages. Yet, SAIP wants this Court to find

that "cost of substitute products" are direct damages because some courts have found that "lost profits" can be both consequential and direct damages.

SAIP relies upon three non-Michigan cases, *Continental AFA Dispensing Co., Elorac, Inc., and Callisto Corp*, which address when lost profits are both consequential and direct damages based upon *noscitur a sociis*. However, SAIP has failed to provide a case applying Michigan law that stands for the proposition that cost of substitute goods can be either direct or consequential damages under the circumstances.[5]

However, the classification of lost profits as consequential damages has been addressed under Michigan law in the context of breach of contract. *See Firwood Mfg. Co. v. Gen. Tire, Inc*., 96 F.3d 163, 171 (6th Cir. 1996). "Michigan courts examine contractual language and give the words their plain and ordinary meanings." *Severstal Dearborn, LLC v. Praxair, Inc.*, 899 F. Supp. 2d 667, 670 (E.D. Mich. 2012). "If the language of the contract is unambiguous, the court construes and enforces the contract as written.... Only when contract language is ambiguous does its meaning become a question of fact." *Id.* "A contract is ambiguous if its words may reasonably be understood in different ways." *Id.*

---

[5] No specific case from Michigan state or federal courts could be located that directly discusses lost profits as consequential or direct damages using the doctrine of *noscitur a sociis*.

Additionally, "[w]hen a contract, though poorly drafted or clumsily arranged, fairly discloses only one meaning, it is not ambiguous." *Id.* (citations omitted). The doctrine of *noscitur a sociis* "requires a contract to be "construed as a whole, and its terms must be construed in context." *Id.*at 671 (E.D. Mich. 2012) (citations and quotations omitted).

Here, there is no ambiguity to the words "cost of substitute products." SAIP attempts to create an ambiguity out of thin air. By taking the plain and ordinary meaning of limited liability provision, it is clear that the merchant parties agreed to exclude cost of substitute products as a recoverable damage. Notwithstanding, even applying *noscitur a sociis* to the limited liability provision, it clearly provides a list of potential consequential, incidental or exemplary damages that the merchant parties agreed to exclude. Providing a list of damages does not create ambiguities in the plain and ordinary meaning of the words used.

### 3. SAIP relies on *In re Indesco* to argue that cover damages are direct damages. However, *In re Indesco* is distinguishable

SAIP next relies on *In re Indesco Int'l, Inc*, 451 B.R. 274, 315 (Bankr. S.D.N.Y. 2011) to argue that cover damages can be both direct and consequential damages, and Meelunie is entitled to seek direct cover damages. However, *In re Indesco* is distinguishable from this case. In *In re Indesco*, the limitation of damages provides: "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY

PUNITIVE, CONSEQUENTIAL, LIQUIDATED, INCIDENTAL OR INDIRECT DAMAGES, INCLUDING DAMAGES FOR LOST PROFITS (EXCEPT AS PROVIDED IN SECTION 4.1.2 BELOW), LOSS OF OPPORTUNITY OR USE OF ANY KIND, SUFFERED BY THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE." *In re Indesco Int'l, Inc.*, 451 B.R. 274, 315 (Bankr. S.D.N.Y. 2011). The court found that because [t]he word "including," which proceeds "lost profits," demonstrates that the lost profits prohibited by section 4.1.1 are those that are a subset of "punitive, consequential, liquidated, incidental, or indirect damages." *Id.* In other words, "lost profits" are only precluded insofar as they fall within the broader categories of indirect or consequential damages. "And subsequently, lost profit damages that are direct or general, and not within a subset of punitive, consequential, liquidated, incidental, or indirect damages, can be recovered." *Id.*

Here, SAIP agreed to exclude cover damages. And SAIP has provided no case law that cover damages can be direct or general damages, and not within a subset of "special consequential, incidental or exemplary damages." Therefore, *In re Indesco* is distinguishable.

### 4. SAIP improperly argues that the third sentence of the limitation of liability provision renders the first sentence meaningless

SAIP erroneously argues that the third sentence of the limitation of liability

provision renders the first sentence meaningless. SAIP's Brief, p. 37. However, the first sentence of the limitation of liability provision deals with liability and the third sentence deals with damages. Thus, the two sentences are separate and distinct, and the third sentence does not render the first meaningless.

Here, the first sentence permits SAIP to seek monetary damages with respect to its agreed upon exclusive remedy. Because SAIP agreed to exclude costs of substitute products does not make other parts of the T&Cs meaningless.

5. **SAIP improperly argues that Meelunie conceded that SAIP is entitled to "direct" cover damages**

SAIP next argues that Meelunie conceded that SAIP is entitled to "direct" cover damages. SAIP's Brief, p. 38. To support its position, SAIP relies on footnote 2 in Meelunie's Motion in Limine to Exclude Expert Report and Testimony. Meelunie made no such concession. That footnote says that only an expert can testify as to what the appropriate type/measure of damages and what should or should not be included in the analysis in this case. (DE 100 at p. 5, fn. 2). However, the footnote does not state that SAIP is entitled to "direct" cover damages.

Meelunie's referenced footnote is accurate in the sense that SAIP *can* cover, but they cannot be compensated for the cover.

### 6. The District Court properly found that it cannot disregard the limitations of liability agreed to by the parties

SAIP's claims and appeal appears centers around buyer's remorse. SAIP agreed to the Contract and now seeks to rewrite the Contract.

The District Court correctly found that it cannot "otherwise disregard the Limitations of Liability **agreed to by the parties**" and "[b]ecause the Terms and Limitations exclude liability for lost profits and the cost of substitute products, SAIP has not presented evidence of recoverable damages necessary to establish a breach of contract." DE 155 at pp. 9-10 (emphasis added).

Here, SAIP agreed to a limited warranty as an exclusive remedy. The Contract specifically excludes "cover" damages. The preclusion of SAIP recovering "cost of substitute products" does not impact the agreed upon exclusive remedy much less renders the limited liability provision unconscionable.

### B. The T&Cs provide SAIP with an agreed upon exclusive remedy

SAIP improperly argues that the T&Cs leave it without a remedy. Contrary to SAIP's claim, SAIP agreed to an exclusive remedy. Paragraph 4 of the T&Cs provides SAIP with an exclusive remedy. (DE 144-3 at ¶ 4).

As the District Court correctly found, "[u]nder Michigan law, parties are free to limit or alter the measure of recoverable damages. M.C.L. §440.2719.

'Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.' M.C.L. §440.2719(3). '[P]arties are generally free to agree to whatever they like [in a contract] and, in most circumstances, it is beyond the authority of the courts to interfere with the parties' agreement.' *Wilkie v. Auto-Owners Ins. Co*., 469 Mich. 41, 62-63 (2003) (rejecting a 'rule of reasonable expectations" for interpreting contracts)." (DE 155 at pp. 7-8); *see also Anaheim Indus, Inc v Gen Motors Corp*, No. 01-06-00440-CV, 2007 WL 4554213, at *9–10 (Tex. App. Dec 20, 2007) (a case involving UCC claims and Michigan law that cites *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. at 62-63, 664 N.W.2d at 787-88).

SAIP argues, without support, that "contrary to the district court's ruling, unconscionability plays no role in the second analysis." However, because SAIP is arguing that the limitation of liability is unconscionable since it leaves it without a remedy, Michigan's two-part test for finding unconscionability in a contract term does apply.

Michigan's two-part test for finding unconscionability in a contract term: the parties must have unequal bargaining power (procedural unconscionability) and the provision must be substantively unreasonable (substantive unconscionability). *Andersons, Inc. v. Horton Farms, Inc.* 166 F.3d 308, 322-23 (6th Cir. 1998) (setting forth two-part test for unconscionability); (DE 155 at p. 9).

The District Court properly found that "[t]here is no evidence in this case that

the parties had unequal bargaining power or that SAIP could not obtain organic tapioca starch elsewhere. Thus, the required procedural unconscionability is not met." (DE 155 at p. 9). In making this determination, the Court analyzed the UCC Comments, the same comments that SAIP refers to in its brief, and found the following:

> The Court recognizes the UCC Comment that "there must be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract." M.L.A. [*sic*] § 440.2719, Comment. But Michigan requires both procedural and substantive unconscionability for a contractual term to be voided as unconscionable and, as stated above, procedural unconscionability is not present. Because the Terms and Limitations exclude liability for lost profits and the cost of substituted products, SAIP has not presented evidence of recoverable damages necessary to establish a breach of contract.

The warranty provision in the T&Cs gave SAIP an exclusive remedy of replacement for defective goods that likewise excluded "cover" damages. Here, the preclusion of cover damages does not leave SAIP without a remedy. SAIP agreed to limit the remedies to the exclusive remedy and SAIP agreed to exclude recoverable "cover" damages. SAIP was not "forced" to purchase replacement tapioca starch from a different source. Rather, SAIP sought a different source in order to avoid paying its outstanding debt owed to Meelunie. As the District Court correctly noted, the "product from the manufacturer and Meelunie's product both arrived in May 2021, but SAIP did not accept product from Meelunie." (DE 155 at p.6, fn. 6).

SAIP argues that the T&Cs fails of its essential purpose and deprives SAIP of the benefit of the bargain pursuant to MCL §440.2719(2). However, the cases that SAIP cites in its Brief do not provide support for an essential purpose analysis to be applied here. Rather, the statute is dependent on the facts and circumstances of each case. Notwithstanding, MCL §440.2719(2) essential purpose analysis does not apply here because SAIP never asked Meelunie to replace or repair defective goods. SAIP has always had the benefit of the bargain of its exclusive remedy under the limited warranty. Indeed, the exercise of the exclusive remedy under the limited warranty was never an issue here.

SAIP contracted for a limited warranty that has an exclusive remedy obligating Meelunie to replace defective goods. The replacement of defective goods is SAIP's agreed on exclusive remedy. "A warranty fails of its essential purpose where unanticipated circumstances **preclude the seller from providing the buyer with the remedy to which the parties agreed**, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions. *Severn v. Sperry Corp.*, 538 N.W.2d 50, 54 (Mich. Ct. App. 1995) (citing *Price Bros. Co. v. Charles J. Rogers Construction Co.*, 104 Mich.App. 369, 374–375, 304 N.W.2d 584 (1981) (emphasis added).[6]

_____

[6] *Wyandotte Elec. Supply Co. v. Electrical Technology Systems, Inc.*, Mich., May 3, 2016 declined to follow *Price Bros. Co.* with respect to the scope of the

SAIP presented no evidence that SAIP received defective goods or that defective goods were not replaced by Meelunie. No claims were raised by SAIP that Meelunie delivered defective products and Meelunie refused or failed to replace the products. The circumstances establish that the limited warranty and its exclusive remedy did not fail in its essential purpose because it is not at issue. Thus, MCL §440.2719(2) is inapplicable to the facts of this case.

SAIP's Brief cites multiple warranty cases that support Meelunie's position that SAIP has the benefit of the bargain of the exclusive remedy under the limited warranty. Those cases are inapposite because they involve circumstances where an exclusive warranty remedy was taken away or denied and, thus, failed of its essential purpose.[7] Here, Meelunie did not revoke SAIP's exclusive remedy. SAIP always had the exclusive remedy and the benefit of the bargain, entitling SAIP to require Meelunie replace defective goods that were delivered.

*Latimer* and *Kelynack* cited by SAIP have the same holding: a buyer is entitled to pursue other remedies under the UCC Code after a sales agreement provision limiting remedies and damages in a warranty claim case failed in its essential purpose. *Kelynack v. Yamaha Motor Corp.*, 152 Mich. App. 105, 394 N.W.2d 17

---

phrase "sum justly due" under the PWBA in *Price Bros. Co. v. Charles J. Rogers Construction Co.*

[7] The District Court distinguished *Latimer v. William*, *Kelynack v. Yamaha Motor Corp.*, and *Newman v. Roland*. (DE 163 at pp. 5-6).

(1986); *Latimer v. William Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618 (1986).

The *Latimer*, *Kelynack*, and the other *warranty* cases cited by SAIP rest on circumstances where the defendant gave the plaintiff an exclusive or limited remedy which was subsequently taken away causing a failure of the essential purpose of the warranty. *Latimer* involved "breach of warranty claims made by plaintiffs . . . involving the sale of defective bean seed by defendant." The *Latimer* court held that "where the defect could not be discovered until after the seed was planted, the remedy prescribed in the limitation of liability clause is an illusory one which represents no remedy at all in that it fails of its essential purpose." *Latimer*, 149 Mich. App. at 637, 386 N.W.2d at 625.

In *Kelynack*, a buyer of defective motorcycle brought suit for breach of warranty against manufacturer and dealer. The Court held that "since defendant failed to repair the motorcycle within a reasonable time, plaintiff was deprived of his exclusive remedy and the limited warranty failed in its essential purpose." *Kelynack*, 152 Mich. App. at 113, 394 N.W.2d at 20 (1986).

Those circumstances do not exist here. SAIP at all relevant times had the benefit of the bargain of the exclusive remedy under the limited warranty. The cases cited by SAIP involve circumstances where the defendants either did not replace the product or did not replace the product in a timely manner, and there, the courts found

that the warranty failed of its essential purpose. Here, there were no claims that Meelunie provided defective goods or failed to replace them and accordingly, SAIP's exclusive remedy has not, and did not fail in its essential purpose.

SAIP also relies on *Foam Supplies*, which illustrates that SAIP is not entitled to cover damages because it agreed to exclude cover damages. *Foam Supplies* found the following:

> The Michigan cases cited by FSI in support of its argument that the clause failed of its essential purpose involve warranties and "exclusive repair" remedies. Where the repair under the warranty was untimely or incomplete, courts have found a failure of essential purpose. *See Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.,* 480 N.W.2d at 356; *Kelynack v. Yamaha Motor Corp., USA,* 394 N.W.2d 17, 21 (Mich.Ct.App.1986); *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.,* 428 F.Supp. 364, 382 (E.D.Mich.1977); *Koehring Co. v. A.P.I., Inc.,* 369 F.Supp. 882, 885–90 (E.D.Mich .1974). **But in a case where lost profits are sought for non-delivery, the normal remedies of cost of cover or specific performance still exist. If this limitation on liability clause fails of its essential purpose, I have difficulty imagining a situation where a clause restricting consequential damages for a breach of contract could ever be found to be valid. As a result, I find that FSI cannot recover its lost profit damages in this breach of contract action because those damages are excluded by the limitation of liabilities clause.**
>
> In conclusion, I will deny Dow's motion for summary judgment on the breach of contract claim, because **questions of fact remain on everything except the lost profits claim**. As a matter of law, FSI **may not recover lost profits because it agreed, when it entered the contract, to exclude that type of damages.**

*Foam Supplies, Inc. v. Dow Chem. Co.*, 4:05CV1772 CDP, 2008 WL 3159598, at

*6 (E.D. Mo. Aug. 4, 2008) (emphasis added). SAIP may not recover cover damages

or lost profits because **SAIP "agreed, when it entered into the Contract, to exclude that type of damages**." (Emphasis added).

SAIP also cites cases that are not governed by Michigan law, which still support Meelunie's position. *Dental Health Products*, a case relying on Wisconsin law, found that the parties may agree to limit remedies for breach of contract and to disclaim consequential damages, provided the limitations are not unconscionable. *Dental Health Products, Inc v Sunshine Cleaning Gen Servs., Inc*, 657 F. Supp. 3d 1151, 1158 (E.D. Wis. 2023) (citing *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513, 519–20 (1978)).

SAIP argues that *Dental Health* allowed the Defendant to pursue cover damages and therefore, so should they. Fatal to this argument is that the plaintiff in *Dental Health Products* did not agree to exclude cost of substitute goods like SAIP did. The liability limitation provision in *Dental Health* provides, in part: Neither party will be liable to the other party for any incidental, indirect, special, or consequential damages, arising out of or in connection with this Agreement, whether or not the parties were advised of the possibility of such damages. *Dental Health Products, Inc v Sunshine Cleaning Gen Servs., Inc*, 657 F. Supp. 3d 1151, 1157 (E.D. Wis. 2023).

*Dental Health* Products found that the liability limitation was not **unconscionable** and must be enforced because "like the other provisions of the

Agreement, was the product of negotiation and a bargaining between sophisticated businesses." *Id.* at 1159. (emphasis added).

Here, SAIP is a sophisticated merchant and agreed to exclude cover damages and agreed to an exclusive remedy. Also, although *Dental Health Products* relies on Ohio law, it also found that limited liability provisions cannot be unconscionable to survive, just like is required in Michigan.

SAIP next cites *BOC Group*, a New Jersey case applying Michigan law, the court found that "[w]hether an exclusive remedy fails in its essential purpose is a question of fact." *BOC Group, Inc. v. Chevron Chem. Co., LLC*, 359 N.J. Super. 135, 148, 819 A.2d 431, 439 (App. Div. 2003). Here, SAIP presented no facts regarding the failure of the exclusive remedy contained in the T&C's.

SAIP next cites *In re Aureal, Inc.* a California bankruptcy case that applied California law and UCC. SAIP argues that this case stands for the proposition that cover damages are not consequential damages, subsection 3 (of California's UCC) only applies to consequential damages, and cover damages cannot be contracted away by limitations of liability clauses if this causes the contract to "fail of its essential purpose" and deprive a party of the benefit of the bargain." SAIP's Brief, p. 44. However, the *In re Aureal* Court noted that the damages that Magic seeks is "not within the letter, of 'cover.'" *In re Aureal, Inc.*, 279 B.R. 573, 584 (Bankr. N.D. Cal. 2002). Rather, Magic was seeking a recoupment. *Id.* at 585.

SAIP next argues that without the ability to recover its direct cover damages, the Contract failed of its essential purpose and deprived SAIP of the benefit of its bargain. SAIP's Brief, p. 44. SAIP takes the position that because the agreed upon exclusive remedy does not apply to the facts of the case (as there is no evidence of defective product), that the essential purpose of the parties agreed upon Contract fails. SAIP's Brief, p. 45. However, SAIP admits that if this were a defective products case, it would have a remedy, and the agreed upon Contract would serve its essential purpose. *Id.* However, SAIP cannot have it both ways. A contract cannot fail of essential purpose under one set of possible damages but not under another possible set of damages.

The District Court correctly found that MCL §440.2719(2) does not apply to the present case because SAIP contracted away the remedy of cover while maintaining the right to cancel the Contract and purchase tapioca starch from other sources. (DE 163). SAIP misconstrues this ruling by arguing that the district court found that canceling a contract is a remedy. It is not. But the ability to purchase Product from other sources is a remedy.

## C. The Contract is not illusory

SAIP improperly argues that the Contract is illusory. SAIP Brief, p. 47. The District Court correctly found that the limitation of damages provision does not

render the Contract illusory because "Meelunie failed opt deliver product as promised, SAIP has the statutory remedies of (1) recovering any amounts paid and (2) cancelling the rest of the contract. See MCL §440.2711(1). In fact, SAIP did not purchase the 5 million pounds that remained on the contract; it exercised its right to cancel the rest of the contract." (DE 163).

An "illusory contract" is defined in Michigan as "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose **no** obligation. The insubstantial promise renders the agreement unenforceable. *ISpine, PLLC v Enter Leasing Co of Detroit*, No. 18-CV-13121, 2019 WL 1399981, at *3 (ED Mich, March 28, 2019) (citations omitted; emphasis added). That is not the case here.

Fatal to SAIP's arguments is that consideration was provided by the parties when they entered into the Contract. Both Parties engaged in business transactions for years that involved buying and selling tapioca starch. Now that SAIP is unhappy with its Contract with Meelunie, it asks the Court to rewrite the Contract and give SAIP the remedies that SAIP contracted to preclude. Here, the Contract is not illusory because there was and is a limited warranty and its exclusive remedy available to SAIP that Meelunie shall replace or repair the defective products which also provides additional consideration for the Contract. Meelunie and SAIP have contracted for Meelunie to supply goods that are not defective and provides a remedy

if they are.

SAIP's Motion cites *River Rouge* in an attempt to argue that the parties' contract is illusory. However, *River Rouge* further supports Meelunie's position that the Parties' Contract is not illusory. In *River Rouge*, the court finds that:

> In order to determine whether an express limited warranty has failed of its essential purpose, the "essential purpose" of the warranty must first be identified. The "essential purpose" of a limited warranty of repair like that present in the case at bar is to provide the seller the opportunity to provide **the buyer with the substantial benefit of its bargain** by supplying goods that conform to the sales agreement while limiting the seller's exposure for damages that might otherwise be available.

*River Rouge Sch. Dist. v. Mestek, Inc.*, 48 UCC Rep. Serv. 2d 1036 (Mich. Ct. App. 2002) (emphasis added).

SAIP argues that the Contract is illusory because Meelunie could have refused to deliver Product to SAIP, walk away from its contractual obligations unscathed, with SAIP powerless to prevent such willful malfeasance, or to avoid the increased costs and delivery delays resulting from the breach. SAIP's Brief, p. 48. But this assertion is not true. There is a difference between delay in delivery and refusal to deliver. The T&Cs provide that Meelunie is not liable for failure to deliver or delay in delivery due to causes beyond its reasonable control, acts of god, etc. *See* DE 144-3 at ¶ 2. Had Meelunie refused to deliver Product just because it did not want to, SAIP would have a cause of action to enforce the Contract or breach of Contract. The breach of Contract would "not exceed the price allowable to such goods or part

thereof involved in the claim." *See* DE 144-3 at ¶ 5. SAIP ignores the fact that Meelunie had Product in May but SAIP improperly elected to buy Product from a different source.

Therefore, the District Court's post-trial ruling should be affirmed.

## CONCLUSION

Meelunie respectfully requests that this Court affirm the District Court's ruling on summary judgment that the T&Cs were incorporated into the Contract. Meelunie further requests that this Court affirm the District Court's final judgment.

Respectfully submitted,

*/s/ Eric A. Parzianello*
Eric A. Parzianello (Fla. Bar No. 161225)

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume and word-count limits of Fed.R.App.P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed.R.App.P.32(f) and 11th Cir. R. 32.4, this brief contains 12,992 words. This document complies with the typeface and type-style requirements of Fed.R.App.P. 32(a)(5) & (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

*/s/ Eric A. Parzianello*
Eric A. Parzianello (Fla. Bar No. 161225)

## CERTIFICATE OF SERVICE

I, Eric A. Parzianello, counsel for Appellee-Defendant/Counter-Plaintiff Meelunie America, Inc., and a member of the Bar of this Court, certify that, on June 19, 2024, a copy of the foregoing was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

*/s/ Eric A. Parzianello*
Eric A. Parzianello (Fla. Bar No. 161225)